UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

H.B. AUTOMOTIVE GROUP, INC., d/b/a
KIA OF THE BRONX, and MAJOR MOTORS
OF LONG ISLAND CITY, INC., d/b/a MAJOR
KIA OF LONG ISLAND CITY,

                         Plaintiffs,              No. 13 CV 4441 (JMF)

   -against-

KIA MOTORS AMERICA,             SECOND AMENDED AND
                                    SUPPLEMENTAL COMPLAINT

                    Defendant.
_____X

     Plaintiffs, H.B. Automotive Group, Inc., d/b/a Kia of the Bronx, and Major Motors of

Long Island City, Inc., d/b/a Major Kia of Long Island City, by and through the undersigned

counsel, as and for their Second Amended and Supplemental Complaint herein, allege the

following:

## I.   **PARTIES, JURISDICTION AND VENUE**

    1.    Plaintiff H.B. Automotive Group, Inc., d/b/a Kia of the Bronx, is a domestic

business corporation organized and existing under the laws of the State of New York, with a

principal place of business at 3333 Boston Road, Bronx, New York.

    2.    Plaintiff Major Motors of Long Island City, Inc., d/b/a Major Kia of Long Island

City, is a domestic business corporation organized and existing under the laws of the State of

New York, with a principal place of business at 44-11/44/33 Northern Boulevard, Long Island

City, New York.

    3.    Defendant Kia Motors America, Inc. (KMA) is a foreign corporation organized

and existing under the laws of the State of California, with its principal place of business in

Irvine, California. KMA is authorized to conduct business and conducts business in the State of New York.

4.      This Court has jurisdiction over this action insofar as there is a complete diversity of citizenship of the parties and the matter in controversy exceeds the sum or value of $75,000, and because this Court has original jurisdiction of all civil actions arising under the laws of the United States (Tenth Claim asserted under 15 U.S.C. Section 1221 *et seq.*). Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II.      FACTUAL ALLEGATIONS

### A. PROVISIONS OF RELEVANT AGREEMENTS BETWEEN THE PARTIES

5.      Plaintiffs Kia of the Bronx and Major Kia of Long Island City are two dealership affiliates of the Major Automotive Companies, Inc. ("Major Auto Group"), an established operator of dealerships selling new and used automobiles in the greater New York City metropolitan area, managed, *inter alia,* by Bruce Bendell and Harold Bendell.

6.      Major Motors of Pennsylvania, Inc., d/b/a Major Kia, with a place of business in Stroudsburg, Pennsylvania, together with Plaintiffs Kia of the Bronx and Major Kia of Long Island City, for more than ten years have been three dealership affiliates of the Major Auto Group, each selling new Kia vehicles under a separate "Kia Dealer Sales and Service Agreement" with KMA.

7.      The respective Kia Dealer Sales and Service Agreements granted each Major Kia, Kia of the Bronx, and Major Kia of Long Island City, the right to operate Kia dealership franchises for the purpose of the sale and service of Kia automobiles.

8.      Article XI of each of the respective Kia Dealer Sales and Service Agreements

permitted each Major Kia, Kia of the Bronx, and Major Kia of Long Island City, to sell and/or transfer ownership of their respective Kia dealerships subject to KMA's approval, upon their completion of certain requirements set forth in Paragraphs 1 through 3 of Section A of Article XI of the Kia Dealer Sales and Service Agreements.

9.   In November 2010, Major Kia reached an agreement to sell its Kia dealership assets to James W. Halterman, an established automobile dealer in Stroudsburg, Pennsylvania, subject to the approval of KMA.

10.   In January 2011, KMA informed Major Kia that it would not approve of the proposed sale of Major Kia's dealership assets to James W. Halterman.

11.   In March 2011, Major Kia reached an agreement to sell its Kia dealership assets to Jason Motts, another established automobile dealer in Stroudsburg, Pennsylvania, subject to the approval of KMA.

12.   KMA initially approved the proposed sale of Major Kia's dealership assets to Jason Motts, but subsequently withdrew its approval.

13.   On September 1, 2011, KMA notified Major Kia of its intent to terminate Major Kia's dealership, within 90 days.

14.   On October 20, 2011, Major Kia filed a protest with the Pennsylvania State Board of Motor Vehicle Manufacturers, Dealers, and Salespersons, challenging KMA's disapproval of the proposed sale of its dealership assets to James W. Halterman, KMA's disapproval of the proposed sale of its dealership assets to Jason Motts, and KMA's notice of intent to terminate Major Kia's dealership.

15.   On or about March 23, 2012, Major Kia, Kia of the Bronx, and Major Kia of Long Island City, the Major Auto Group, Bruce Bendell, and Harold Bendell, on the one hand,

3

and KMA, on the other hand, entered into a "Master Settlement Agreement," resolving the foregoing disputes between Major Kia and KMA, as well as other disputes between Major Kia of Long Island City and Kia of the Bronx, on the one hand, and KMA, on the other hand.

16.     The Master Settlement Agreement by its terms was conditioned on the completion of a then-proposed sale of Major Kia to Jason Motts, a condition that was satisfied shortly after the March 23, 2012 date of the Master Settlement Agreement.

17.     The Master Settlement Agreement, *inter alia*, required KMA to provide Major Kia of Long Island City with a supplemental allocation of new Kia automobiles to assure that Major Kia of Long Island City would have at any particular time in its dealer inventory, or on order from KMA, a total of approximately 300 new Kia vehicles in a mix and assortment of models consistent with overall regional sales by Kia dealers.

18.     The Master Settlement Agreement, *inter alia*, required Major Kia of Long Island City to renovate its showroom and facilities to participate in a KMA- sponsored "Gallery" sales program.

19.     The Master Settlement Agreement, *inter alia,* provided that the Kia Dealer Sales and Service Agreement between Kia of the Bronx and KMA would be terminated on the effective date of September 30, 2013, unless Kia of the Bronx, by September 1, 2013, submitted to KMA a proposed agreement to sell its dealership assets to a third party acceptable to KMA.

20.     The Master Settlement Agreement, *inter alia*, provided that KMA would not unreasonably withhold its approval of a proposed agreement to sell Kia of the Bronx's dealership assets to a third party, within the meaning of § 463(2)(k) of the New York Franchised Motor Vehicle Dealer Act.

21.     The Master Settlement Agreement, *inter alia*, required KMA to provide Major Kia of Long Island City with financial assistance in the amount of $750,000, for the renovation of its showroom and facilities. KMA's financial assistance to Major Kia of Long Island City was conditioned on (a) Major Kia of Long Island City's reaching a specified level of sales performance, (b) Major Kia of Long Island City's commencement of construction of its new "Gallery" showroom, and (c) completion of either the sale to a qualified third party or the voluntary termination of Kia of the Bronx.

22.     The Master Settlement Agreement, *inter alia*, provided that in the event that Kia of the Bronx were to bring a claim against KMA alleging wrongful disapproval of a proposed purchaser of its dealership assets, the sole remedy for Kia of the Bronx would be monetary damages, as under the terms of the Master Settlement Agreement, Kia of the Bronx waived the right to seek any temporary, preliminary or permanent injunctive relief against the termination of its Kia dealership by KMA on the effective date of September 30, 2013.

## B. KMA's MATERIAL BREACH OF THE MASTER SETTLEMENT AGREEMENT WITH MAJOR KIA OF LONG ISLAND CITY AND KIA OF THE BRONX

i.      **Failure of KMA to Make Required Appropriate Supplemental Allocation of New Automobiles**

23.     Despite the performance by Major Kia of Long Island City of all conditions precedent to its right under the Master Settlement Agreement to a supplemental allocation of new Kia automobiles in a mix and assortment of models consistent with overall regional retail sales by Kia dealers, KMA failed to provide Major Kia of Long Island City with the required appropriate supplemental allocation of new Kia automobiles.

24.     The supplemental allocation of new Kia automobiles provided by KMA to Major Kia of Long Island City was in a mix and assortment of automobile models that were unsalable to persons shopping for the purchase of a new automobile.

25.     Major Kia of Long Island City communicated its concerns to KMA about the unsalable mix and assortment of automobile models provided to it under the terms of the Master Settlement Agreement.

26.     Major Kia of Long Island City was not successful in persuading KMA to modify the mix and assortment of automobile models provided to it under the terms of the Master Settlement Agreement, in order to make the mix and assortment of models more salable.

27.     The financial consequences to Major Kia of Long Island City were disastrous from having its dealership automobile inventory tied up with unsalable models provided to it by KMA under the terms of the Master Settlement Agreement. As a result, in order to mitigate its damages from KMA's wrongful supplying of a mix and assortment of unsalable automobile models under the terms of the Master Settlement Agreement, Major Kia of Long Island City requested that KMA cease the supplemental allocation of new automobiles under the Master Settlement Agreement.

**ii.     Failure of KMSA to Provide Required Financial Assistance for Renovation of Showroom and Facilities of Major Kia of Long Island City**

28.     Despite the readiness of Major Kia of Long Island City to satisfy all the conditions precedent to its right under the Master Settlement Agreement to $750,000 in financial assistance from KMA for the renovation of its showroom and facilities, it has become apparent to Major Kia of Long Island City that KMA is unwilling to provide the required financial assistance to Major Kia of Long Island City.

29.     The renovation of the showroom and facilities of Major Kia of Long Island City was estimated to cost $750,000 at the time that the Master Settlement Agreement was entered, based on an estimate from Major Kia of Long Island City to relocate the former contents of the showroom at a cost of $250,000, and an estimate from KMA that construction of new "Gallery" showroom according to KMA's specifications at a cost of $500,000.

30.     Major Kia of Long Island City expended considerable amounts of money required to dismantle the former showroom facilities at its Kia dealership location on Northern Boulevard, and to have ready the architectural plans for construction of the new showroom to comply with KMA's "Gallery" showroom specifications.

31.     In the process of planning to renovate its showroom to comply with the "Gallery" showroom specifications of KMA, Major Kia of Long Island City ascertained that the cost of such renovation would significantly exceed the estimate of $500,000 initially received from KMA, and would likely exceed $1,000,000.

32.     Major Kia of Long Island City communicated to KMA that it had completed the planning process for the new "Gallery" showroom on Northern Boulevard, was ready, willing and able to commence construction.

33.     KMA communicated to Major Kia of Long Island City its unwillingness to provide it with the required $750,000 in financial assistance for the renovation of its showroom on Northern Boulevard, unless other conditions in the Master Settlement Agreement were satisfied, i.e., (a) Major Kia of Long Island City's maintaining a specified sales performance, and (b) the completion of either the sale to a qualified third party or the voluntary termination of Kia of the Bronx.

34.     Due to KMA's actions, it has become impossible for Major Kia of Long Island City to fulfill the latter two conditions of receiving the required $750,000 in financial assistance for the renovation of its showroom. The failure of KMA to provide an appropriate supplemental allocation of new automobiles for sale, as set forth above, made it impossible for Major Kia of Long Island City to maintain the specified sales performance. In addition, the completion of the sale of Bronx Kia to a qualified third party has become impossible, as set forth below, due to KMA's withholding approval of the sale of Kia of the Bronx to a qualified third party.

35.     KMA's unwillingness to provide an appropriate supplemental allocation of new Kia automobiles to Major Kia of Long Island City, and KMA's unwillingness to approve the sale of Kia of the Bronx to a qualified third party, are material breaches of KMA's obligations to Major Kia of Long Island City under the Master Settlement Agreement and the parties' dealer agreement.

36.     In order to mitigate its damages from the unwillingness of KMA to provide Major Kia of Long Island City the required $750,000 in financial assistance for renovation of its showroom, after the conduct of KMA itself rendered it impossible for Major Kia of Long Island City to fulfill the conditions of a specified sales performance, and the completion of the sale of Bronx Kia to a qualified third party, Major Kia of Long Island City has deferred proceeding with the construction of its new "Gallery" showroom and facilities, despite its readiness to do so.

iii.    **KMA's Withholding of Approval of the Sale
        of the Dealership Assets of Kia of the Bronx**

37.     On April 5, 2012, Kia of the Bronx and Philip Argyropoulos entered into a written Asset Purchase Agreement (the "APA"), whereby Argyropoulos agreed to purchase all of the assets of Kia of the Bronx and take over Kia of the Bronx's dealership.

38.     Kia of the Bronx complied with each and every requirement set forth in Article XI, Section A, of the Kia Dealer Sales and Service Agreement, pertaining to the Sale of Ownership interest in the Kia dealership, and sought KMA's approval of the APA between Kia of the Bronx and Argyropoulos.

39.     In connection with Kia of the Bronx's requirements under Article XI, Section A of the Kia Dealer Sales and Service Agreement, Argyropoulos submitted an application to KMA for a franchise agreement.

40.     Thereafter, on or about May 24, 2012, KMA summarily disapproved of the APA between Kia of the Bronx and Argyropoulos, and the Argyropoulos application in their entirety, based on false assertions that the facilities Argyropoulos planned to operate a Kia dealership on Boston Road in the Bronx were inadequate, and that Argyropoulos' sales performance as a Mitsubishi dealer was inadequate.

41.     On September 12, 2012, Kia of the Bronx submitted to KMA a "First Amendment to Contract" (the "Amendment"), which amended the APA between Kia of the Bronx and Argyropoulos in an effort to, once again, gain KMA's approval of the APA between Kia of the Bronx and Argyropoulos and the sale of Kia of the Bronx's dealership to Argyropoulos.

42.     Upon information and belief, Argyropoulos then submitted additional documentation to KMA to further support and bolster his qualifications as a Kia dealer, which exceed the minimum standards for a Kia franchise.

43.     On November 9, 2012, KMA again disapproved of the APA between Kia of the Bronx and Argyropoulos, and the Argyropoulos application in their entirety, based on false and/or disingenuous grounds.

44.     On February 15, 2013, Kia of the Bronx resubmitted the APA between Kia of the Bronx and Argyropoulos to KMA a third time after failing to obtain any fair market value offers for the assets of the dealership.

45.     KMA has wrongfully, illegally, intentionally and purposefully rejected both the APA between Kia of the Bronx and Argyropoulos and the APA with the Amendment as well as subsequent proposed asset purchase agreements submitted by Kia of the Bronx to KMA.

46.     KMA's disapproval of both the APA between Kia of the Bronx and Argyropoulos and the APA with the Amendment, as well as subsequent proposed asset purchase agreements submitted by Kia of the Bronx to KMA, were in bad faith and in violation of the Kia Dealer Sales and Service Agreement, the Master Settlement Agreement, and Section 463(2)(k) of the Franchised Motor Vehicle Dealer Act of the State of New York.

47.     The reasons provided by KMA for the disapproval of Argyropoulos, as well as the disapproval of subsequent proposed asset purchase agreements submitted by Kia of the Bronx to KMA, were simply a pretext for the actual disingenuous reasons behind such disapprovals.

48.     The APA between Kia of the Bronx and Argyropoulos was for an amount equal to the fair market value of Kia of the Bronx's assets.

49.     Rather than approve the APA between Kia of the Bronx and Argyropoulos or the APA with the Amendment, which would have enabled Kia of the Bronx to obtain the fair market value of its assets from the purchaser, KMA has attempted to force and/or coerce Kia of the Bronx into selling its assets to a third party recommended by KMA, to whom KMA has represented it would approve of the sale.

50.     The prospective purchaser recommended by KMA, to whom KMA has represented it would approve, has offered Kia of the Bronx far less than the fair market value of

Kia of the Bronx's assets, and upon information and belief, does not possess a facility in the Bronx that can support a Kia franchise.

51.    At some time subsequent to Kia of the Bronx's submission of the APA with the Amendment, KMA represented to Kia of the Bronx that it would approve Argyropoulos if he partnered with a former owner of a failed Chrysler dealership who was a friend of a KMA representative.

52.    KMA's actions in attempting to force and/or coerce Kia of the Bronx to sell its assets to the third party it recommended, and the suggestion to bring in a less-desirable business partner in order to gain approval of the sale, are wrongful, illegal, and intentional, amounting to bad faith.

53.    KMA's actions in attempting to force and/or coerce Kia of the Bronx to sell its assets to this third party, for an amount far below fair market value, as well as their disapproval of Argyropoulos and the disapproval of subsequent proposed asset purchase agreements submitted by Kia of the Bronx to KMA, constitute a breach of the Kia Dealer Sales and Service Agreement, the Master Settlement Agreement, and Sections 463(2)(k) and 466(1) and (2) of the Franchised Motor Vehicle Dealer Act of the State of New York, and a breach of the covenant of good faith and fair dealing.

54.    KMA's additional attempt to force Argyropoulos to accept an undesirable business partner evidences a flagrant effort by KMA representatives to use this business transaction as a means to benefit personal relationships to the detriment of Kia of the Bronx and Argyropoulos.

### iv.    KMA Wrongfully Seeks to Terminate Major Kia of Long Island City

55.     Despite the readiness of Major Kia of Long Island City to satisfy all the conditions precedent to its right under the Master Settlement Agreement to $750,000 in financial assistance from KMA for the renovation of its showroom and facilities, it has become apparent to Major Kia of Long Island City that KMA is unwilling to provide the required financial assistance to Major Kia of Long Island City.

56.     The renovation of the showroom and facilities of Major Kia of Long Island City was estimated to cost $750,000 at the time that the Master Settlement Agreement was entered, based on an estimate from Major Kia of Long Island City to relocate the former contents of the showroom at a cost of $250,000, and an estimate from KMA that construction of new "Gallery" showroom according to KMA's specifications at a cost of $500,000.

57.     Major Kia of Long Island City expended considerable amounts of money required to dismantle the former showroom facilities at its Kia dealership location on Northern Boulevard, and to have ready the architectural plans for construction of the new showroom to comply with KMA's "Gallery" showroom specifications.

58.     In the process of planning to renovate its showroom to comply with the "Gallery" showroom specifications of KMA, Major Kia of Long Island City ascertained that the cost of such renovation would significantly exceed the estimate of $500,000 initially received from KMA, and would likely exceed $1,000,000.

59.     Major Kia of Long Island City communicated to KMA that it had completed the planning process for the new "Gallery" showroom on Northern Boulevard, was ready, willing and able to commence construction.

60.     KMA communicated to Major Kia of Long Island City its unwillingness to provide it with the required $750,000 in financial assistance for the renovation of its showroom

on Northern Boulevard, unless other conditions in the Master Settlement Agreement were satisfied, i.e., (a) Major Kia of Long Island City's maintaining a specified sales performance, and (b) the completion of either the sale to a qualified third party or the voluntary rumination of Kia of the Bronx.

61.     Due to KMA's actions, it has become impossible for Major Kia of Long Island City to fulfill the latter two conditions of receiving the required $750,000 in financial assistance for the renovation of its showroom. The failure of KMA to provide an appropriate supplemental allocation of new automobiles for sale, as set forth above, made it impossible for Major Kia of Long Island City to maintain the specified sales performance. In addition, the completion of the sale of Bronx Kia to a qualified third party has become impossible due to KMA's in withholding approval of the sale of Kia of the Bronx to a qualified third party.

62.     Major Kia of Long Island City regards KMA's unwillingness to provide an appropriate supplemental allocation of new Kia automobiles to Major Kia of Long Island City, and KMA's unwillingness of to approve the sale of Kia of the Bronx to a qualified third party, are material breaches of KMA's obligations to Major Kia of Long Island City under the Master Settlement Agreement and the parties' dealer agreement.

63.     In order to mitigate its damages from the unwillingness of KMA to provide Major Kia of Long Island City the required $750,000 in financial assistance for renovation of its showroom, after the conduct of KMA itself rendered it impossible for Major Kia of Long Island City to fulfill the conditions of a specified sales performance, and the completion of the sale of Bronx Kia to a qualified third party, Major Kia of Long Island City has deferred proceeding with the construction of its new "Gallery" showroom and facilities, despite its readiness to do so.

64.     By letter dated November 5, 2013 KMA advised Major Kia of Long Island City that it will be terminating (without due cause and in violation of the New York State Franchised Motor Vehicle Dealer Act, Vehicle and Traffic Law (the "New York Act"), within ninety (90) days thereafter, the parties' Dealer Agreement and Major Kia of Long Island City's Kia franchise.

65.     KMA, in its November 5, 2013 letter has taken the position that its termination of Major Kia of Long Island City's dealer agreement is justified based upon an alleged breach of the Master Settlement Agreement by Major Kia of Long Island City in failing to renovate its Kia showroom as per the Master Settlement Agreement.

66.     Defendant's November 5, 2013 letter is an attempt by Defendant to contravene the very purpose of the New York Act.

67.     It is Defendant who has prevented any fulfillment by Major Kia of Long Island City of its alleged and purported obligations under the parties' Dealer Agreement and the Master Settlement Agreement and Defendant, therefore, cannot rely upon such conditions to benefit from its own wrongful acts.

68.     Defendant cannot rely upon any alleged failure by Major Kia of Long Island City to perform under the parties' Dealer Agreement or the Master Settlement Agreement where it has frustrated or prevented Major Kia of Long Island City's performance.

69.     If Major Kia of Long Island City can be found to have failed to fulfill any of its obligations under either its dealer agreement with Defendant or the Master Settlement Agreement, it was solely due to the wrongful conduct of Defendant.

70.     Defendant's November 5, 2013 illegal termination letter was fabricated as a means to somehow legally justify the Defendant's bad faith attempt at terminating Major Kia of Long Island City's franchise.

71.     The mere filing of the Major Kia of Long Island City's Second Amended Complaint in this action entitles Major Kia of Long Island City to the statutory stay of the Defendant's threatened termination contained in its November 5, 2013 notice of termination and from otherwise restricting the parties' dealer agreement and Major Kia of Long Island City's right to own and operate a Kia dealership.

72.     Defendant's November 5, 2013 letter is an attempt by Defendant to contravene the very purpose of the New York Act, and do an illegal "end around" the protections afforded Major Kia of Long Island City under the New York Act.

73.     Defendant's November 5, 2013 illegal termination letter stems from Defendant's continuing, wrongful and illegal efforts to prevent and block Major Kia of Long Island City from obtaining the fair value of their franchises.

74.     Defendant, however, who has prevented Major Kia of Long Island City's fulfillment of its alleged and purported obligation under the parties' Dealer Agreement and the Master Settlement Agreement, cannot rely upon such conditions to benefit from its own wrongful acts.

75.     Defendant cannot rely on any alleged failure by Major Kia of Long Island City to perform a condition precedent under either the parties' Dealer Agreement or the Master Settlement Agreement where it has frustrated or prevented Major Kia of Long Island City's performance.

76.     If Major Kia of Long Island City can be found to have failed to fulfill any of its obligations under either the parties' Dealer Agreement or the Master Settlement Agreement, it was solely due to the wrongful conduct of Defendant.

77.    Defendant's November 5, 2013 illegal letter was fabricated as a means to somehow legally justify the Defendant's latest bad faith attempt at terminating Major Kia of Long Island City's franchise.

78.    The actions of KMA have resulted in significant and substantial damages to be sustained by Major Kia of Long Island City, including the destruction of Major Kia of Long Island City's business.

79.    The actions of KMA have been a restriction upon Major Kia of Long Island City's right to own and operate a Kia franchised dealership.

80.    The actions of KMA have negatively impacted Major Kia of Long Island City's parts, service and sales business.

81.    The actions on the part of KMA toward Major Kia of Long Island City are tantamount to a termination and/or constructive termination of the Dealer Agreement without due cause.

### III.    <u>CLAIMS FOR RELIEF</u>

### <u>FIRST CLAIM</u>
### (BREACH OF CONTRACT – MAJOR KIA OF LONG ISLAND CITY)

82.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "81" above, as if set forth fully at length herein.

83.    KMAs actions, including, but not limited to its November 5, 2013 wrongful threatened termination of Major Kia of Long Island City, constitute a breach of the KMA obligations under the parties' dealer agreement and the Master Settlement Agreement.

84.    The Master Settlement Agreement required KMA to provide Major Kia of Long Island City with financial assistance in the amount of $750,000, for the renovation of its showroom and facilities. KMA's financial assistance to Major Kia of Long Island City was

conditioned on (a) Major Kia of Long Island City's reaching a specified level of sales performance, (b) Major Kia of Long Island City's commencement of construction of its new "Gallery" showroom, and (c) completion of either the sale to a qualified third party or the voluntary termination of Kia of the Bronx.

85.     Major Kia of Long Island City has expended considerable resources in planning its new "Gallery" showroom for the sale of new Kia automobiles, and is ready, willing, and able to commence construction.

86.     KMA's failure to provide an appropriate supplemental allocation of new Kia automobiles to Major Kia of Long Island City constitutes a material breach of KMA's obligations under the Master Settlement Agreement and the parties' dealer agreement.

87.     KMA's withholding of approval of the sale of Kia of the Bronx to a qualified buyer, as set forth below, constitutes a material breach of KMA's obligations under the Master Settlement Agreement and the parties' dealer agreement.

88.     KMA's unwillingness to provide Major Kia of Long Island City with the required $750,000 in financial assistance for renovation of the showroom, unless Major Kia of Long Island City fulfilled two conditions that whose performance was rendered impossible by KMA's own actions, i.e., Major Kia of Long Island City's reaching a specified level of sales performance, and completion of the sale of Kia of the Bronx to a qualified third party, constitutes an anticipatory breach of KMA's obligations under the Master Settlement Agreement, excusing Major Kia of Long Island City from satisfying the third condition of its entitlement to $750,000 in financial assistance from KMA, i.e., commencement of the construction of its new showroom.

89.     Based on the foregoing, Major Kia of Long Island City is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

## SECOND CLAIM
### (BREACH OF CONTRACT – KIA OF THE BRONX)

90.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "89" above, as if set forth fully at length herein.

91.     KMA's disapproval of the APA between Kia of the Bronx and Argyropoulos, and the APA with Amendment constitute a breach of KMA's obligations under the Kia Dealer Sales and Service Agreement, and the Master Settlement Agreement.

92.     As a result of KMA's breach of contract, Kia of the Bronx has been damaged.

93.     Based on the foregoing, Kia of the Bronx is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

94.     Based on the foregoing, Kia of the Bronx is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

## THIRD CLAIM
### (TORTIOUS INTERFERENCE WITH CONTRACT)

95.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "94" above, as if set forth fully at length herein.

96.     The APA between Kia of the Bronx and Argyropoulos, and the APA with Amendment, were valid contracts.

97.     KMA had knowledge of the existence of the APA between Kia of the Bronx and Argyropoulos, and the APA with Amendment.

98.     KMA intentionally rendered performance of both the APA between Kia of the Bronx and Argyropoulos, and the APA with Amendment, impossible by placing unreasonable restrictions upon the sale of Kia of the Bronx's assets to Argyropoulos.

99.     As a result of KMA's tortious interference with Kia of the Bronx's contractual relations, Kia of the Bronx has been damaged.

100.    As a result of KMA's tortious interference with Kia of the Bronx's contractual relations, Kia of the Bronx has been damaged.

101.    Based on the foregoing, Kia of the Bronx is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

## FOURTH CLAIM
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

102.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "101" above, as if set forth fully at length herein.

103.    Kia of the Bronx and Argyropoulos were engaged in prospective business relations.

104.    KMA had knowledge of the business relations between Kia of the Bronx and Argyropoulos.

105.    KMA intentionally interfered with the business relations between Kia of the Bronx and Argyropoulos, by placing unreasonable restrictions upon the sale of Kia of the Bronx's assets to Argyropoulos.

106.    As a result of KMA's tortious interference with Kia of the Bronx's business relations, Kia of the Bronx has been damaged.


107.    Based on the foregoing, Kia of the Bronx is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

## FIFTH CLAIM

**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**

108.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "107" above, as if set forth fully at length herein.

109.     KMA's actions in connection with its disapproval of the APA between Kia of the Bronx and Argyropoulos constitute an intentional breach of the implied covenant of good faith and fair dealing in the Kia Dealer Sales and Service Agreement, and the Master Settlement Agreement.

110.     As a result of KMA's intentional breach of the implied covenant of good faith and fair dealing in the Kia Dealer Sales and Service Agreement, and the Master Settlement Agreement, Kia of the Bronx has been damaged.

111.     Based on the foregoing, Kia of the Bronx is entitled to monetary damages against KMA in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

### SIXTH CLAIM
### (BAD FAITH CONDUCT IN VIOLATION OF
### FRANCHISED MOTOR VEHICLE DEALER ACT)

112.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "111" above, as if set forth fully at length herein.

113.     The New York Franchised Motor Vehicle Dealer Act, Vehicle and Traffic Law § 460 *et seq*. expresses the New York Legislature's concern over, and effort to remedy, past abuses which franchisors have inflicted upon their franchisees.

114.     The Franchised Motor Vehicle Dealer Act provides at § 460 as follows:

The legislature finds and declares that the distribution and sales of motor vehicles within this state virtually affects the genera; economy of the state and public interest and the public welfare and in the exercise of its police power. It is

21

necessary to regulate motor vehicle manufacturers, distributors and factory or distributor representatives and to regulate dealers of motor vehicles doing business in the state to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of the state.

115.    The Franchised Motor Vehicle Dealer Act further provides for statutory provisions for motor vehicle franchisees in their dealings with motor vehicle franchisors.

116.    Kia of the Bronx is a "franchised motor vehicle dealer" within the meaning of § 462(7) of the Franchised Motor Vehicle Dealer Act.

117.    KMA is a "franchisor" within the meaning of § 462(8) of the Franchised Motor Vehicle Dealer Act.

118.    The Kia Dealer Sales and Service Agreement between KMA and Kia of the Bronx is "franchise" within the meaning of § 462(6) of the Franchised Motor Vehicle Dealer Act.

119.    § 463(2)(d)(1) of the New York Act provides, in pertinent part, as follows:

> It shall be unlawful for any franchisor to terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise.

120.    The actions of KMA have and will result in significant and substantial damages to be sustained by Kia of the Bronx, including the destruction of Kia of the Bronx's business.

121.    The above-actions by KMA are restrictions upon Kia of the Bronx right to own and operate a KMA franchised dealership and have devastated Kia of the Bronx parts, service and sales business.

122.    KMA' wrongful acts and bad faith conduct as set forth above violate Section 463(2)(d)(1) of the New York Act.

123.    As a result of KMA' violation of Section 463(2)(d)(1) of the New York Act, Kia of the Bronx has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $1,200,000.

## SEVENTH CLAIM
## (UNREASONABLE RESTRICTION ON RIGHT TO SELL A FRANCHISE)

124.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "123" above, as if set forth fully at length herein.

125.    The Franchised Motor Vehicle Dealer Act provides at § 466(1) and (2):

It shall be unlawful for any franchisor directly or indirectly to impose unreasonable restriction on the franchised motor vehicle dealer relative to transfer, sale, right to renew or termination of a franchise, discipline, noncompetition covenants, site control, (whether by sublease, collateral, pledge of lease or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership.

*    *    *

It shall be deemed an unreasonable restriction upon the sale or transfer of a dealership for a franchisor (i) directly or indirectly to prevent or attempt to prevent a franchised motor vehicle dealer from obtaining the fair value of the franchise or the fair value of the dealership business as a going concern.

126.    KMA's course of conduct including, inter alia, its wrongful disapproval of the APA and the APA with Amendment, as well as subsequent proposed sales of Kia of the Bronx, through its unreasonable restrictions on the ability of Kia of the Bronx to transfer or sell its assets for their fair market value, violates § 466(1) and (2) of the Franchised Motor Vehicle Dealer Act.

127.    KMA unreasonably restricted Kia of the Bronx from selling its assets to Argyropoulos by falsely disapproving Argyropoulos on the theory that his current dealership possessed a deficient customer satisfaction record, was deficient in meeting KMA's facility

standards, that he possessed an insufficient track record as a dealer and unqualified partners; all of which are untrue.

128.    KMA unreasonably restricted Kia of the Bronx from selling its assets to Argyropoulos (as well as other potential purchasers) for their fair market value by using false reasons as a pretext for disqualifying Argyropoulos for a Kia franchise.

129.    As a result of KMA's violation of § 466(1) and (2) of the Franchised Motor Vehicle Dealer Act, Kia of the Bronx has sustained and will sustain substantial damages in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

### EIGHTH CLAIM
### (UNREASONABLE WITHHOLDING TO CONSENT TO SALE OF FRANCHISE)

130.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "129" above, as if set forth fully at length herein.

131.    Kia of the Bronx has been aggrieved by KMA's violations of the Franchised Motor Vehicle Dealer Act.

132.    The Franchised Motor Vehicle Dealer Act provides at § 463(2)(k):

It shall be unlawful for any franchisor:

\*          \*          \*

To unreasonably withhold consent to the sale or transfer of an interest, in whole or in part, to any other person or party by any franchised motor vehicle dealer or any partner or stockholder of any franchised motor vehicle dealer.

133.    KMA unreasonably withheld its consent to the sale of the interests in the franchise of Kia of the Bronx to Argyropoulos.

134.    KMA would have the Court believe its withholding of consent to the sale of the assets of Kia of the Bronx was based on deficiencies in the application filed by Argyropoulos; however, its reasons are purely pretextual and disingenuous as further set forth herein.

135.   As a result of KMA's violation of § 463(2)(k) of the Franchised Motor Vehicle Dealer Act, Kia of the Bronx has sustained and will sustain substantial damages in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000.

## NINTH CLAIM
### (INJUNCTIVE RELIEF UNDER FRANCHISED MOTOR VEHICLE DEALER ACT)

136.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "135" above, as if set forth fully at length herein.

137.   Kia of the Bronx has been aggrieved by KMA's violations of the Franchised Motor Vehicle Dealer Act.

138.   The Franchised Motor Vehicle Dealer Act provides at § 469:

A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

139.   KMA's course of conduct, as set forth above, is, among other things, (a) violative of the New York Franchised Motor Vehicle Dealer Act, (b) violative of the Master Settlement Agreement, and (c) in breach of the good faith and fair dealing implied in every contract.

140.   In the event that KMA is allowed to terminate the Kia Dealer Sales and Service Dealer Agreement between Kia of the Bronx and KMA, Kia of the Bronx will suffer the loss of its entire business.

141.   In the event that KMA is allowed to terminate the Kia Dealer Sales and Service Dealer Agreement between Kia of the Bronx and KMA, Kia of the Bronx will go out of business and thus will suffer irreparable injury.

142.   Kia of the Bronx has no adequate remedy at law.

143.    Pursuant to the New York Franchised Motor Vehicle Dealer Act § 469, Kia of the Bronx is entitled to a permanent injunction enjoining KMA from terminating, suspending, canceling, limiting or otherwise restricting: (a) Kia of the Bronx's rights under the Kia Dealer Sales and Service Agreement; and (b) Kia of the Bronx's right to own and operate a Kia franchised motor vehicle dealership.

144.    The provisions of the Master Settlement Agreement, by which Kia of the Bronx agreed not to seek injunctive relief against the termination of its dealership by KMW, are of no force and effect, as a result of KMW's material breach of its obligations under the Master Settlement Agreement as set forth herein.

145.    Therefore, pursuant to the New York Franchised Motor Vehicle Dealer Act § 469, and pursuant to the Federal Rules of Civil Procedure, Kia of the Bronx is entitled to a permanent injunction enjoining KMW from terminating, suspending, canceling, limiting or otherwise restricting the Kia Dealer Sales and Service Dealer Agreement and Kia of the Bronx's right to own and operate a Kia dealership.

## TENTH CLAIM
### (AUTOMOBILE DEALER'S DAY IN COURT ACT)

146.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "145" above, as if set forth fully at length herein.

147.    The Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221, *et seq.*, provides a dealer with a federal claim against an automobile manufacturer who has failed to act in good faith regarding a franchise.

148.    KMA is an "automobile manufacturer" within the meaning of 15 U.S.C. § 1221(a).

26

149.    Kia of the Bronx is an "automobile dealer" within the meaning of 15 U.S.C. § 1221(e).

150.    The Kia Dealer Sales and Service Agreement is a "franchise" within the meaning of 15 U.S.C. § 1221(b).

151.    KMA's bad faith conduct and wrongful acts, as set forth above, including its withholding of consent to the sale of the dealership assets of Kia of the Bronx to a qualified buyer, and its imminent termination of Kia of the Bronx, violate the Automobile dealer's Day in Court Act, 15 U.S.C. § 1222.

152.    As a result of KMA's violation of the Automobile Dealer's Day in Court Act, 15 U.S.C. 15 U.S.C. §1221, *et seq.*, Kia of the Bronx has sustained and will sustain substantial damages in an amount to be determined at the trial of this action, but estimated to be in excess of $1,200,000, and is entitled to permanent injunction enjoining KMA from terminating, suspending, canceling, limiting or otherwise restricting the Kia Dealer Sales and Service Dealer Agreement and Kia of the Bronx's right to own and operate a Kia dealership.

## ELEVENTH CLAIM
## (ATTORNEYS' FEES UNDER FRANCHISED MOTOR VEHICLE DEALER ACT)

153.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "152" above, as if set forth fully at length herein.

154.    Kia of the Bronx is entitled, pursuant to the New York Franchised Motor Vehicle Dealer Act § 469, to an award, as against KMA of necessary costs and disbursements plus a reasonable attorney's fee as a result of KMA's violations of the New York Franchised Motor Vehicle Dealer Act.

155.    Kia of the Bronx has and will incur attorney's fees, costs and expenses in connection with its enforcement of its rights under the New York Franchised Motor Vehicle

Dealer Act, all of which sums, as determined and allowed by the Court, Kia of the Bronx is entitled to judgment as against KMA.

## TWELFTH CLAIM
### (PUNITIVE DAMAGES)

156.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "155" above, as if set forth fully at length herein.

157.    KMA's actions as described above were and are knowing, intentional, willful, malicious, and in reckless disregard of the contractual, statutory and common law rights of Kia of the Bronx.

158.    As a result of KMA's actions, Kia of the Bronx is entitled to punitive damages in an amount to be determined at the time of trial but in no event less than $10,000,000.

## THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF § 466(2) OF THE NEW YORK ACT)

159.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "158" as if each were more fully set forth at length herein.

160.    The New York Act § 460 et. seq. expresses the New York legislature's concern over, and effort to remedy, past abuses which franchisors have inflicted upon their franchisees.

161.    The New York Act provides at § 460, as follows:

> The legislature finds and declares that the distribution and sale of motor vehicles within this state vitally affects the general economy of the state and public interest and the public welfare and, that in order to promote the public interest and the public welfare and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors and factory or distributor representatives and to regulate dealers of motor vehicles doing business in this state in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state.

162.    The New York Act further provides statutory protections for motor vehicle franchisees in their dealings with motor vehicle franchisors.

163.    Major Kia of Long Island City is a "franchised motor vehicle dealer" within the meaning of Section 462(7) of the New York Act.

164.    KMA is a "franchisor" within the meaning of Section 462(8) of the New York Act.

165.    The Dealer Agreement between KMA and Major Kia of Long Island City is a "franchise" within the meaning of Section 462(6) of the New York Act.

166.    Section 466(2) of the New York Act provides that:

It shall be deemed an unreasonable restriction upon the sale or transfer of a dealership for a franchisor (i) directly or indirectly to prevent or attempt to prevent a franchised motor vehicle dealer from obtaining the fair value of the franchise or the fair value of the dealership business as a going concern.

167.    Defendant's wrongful acts and bad faith conduct as set forth above violates Section 466(2) of the New York Act.

168.    As a result of Defendant's violation of Section 466(2) of the New York Act, Major Kia of Long Island City has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

## FOURTEENTH CLAIM FOR RELIEF
### (VIOLATION OF § 466(1) OF THE NEW YORK STATE FRANCHISED MOTOR VEHICLE DEALER ACT)

169.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "168" as if each were more fully set forth at length herein.

170.    Section 466(1) of the New York Act provides, in pertinent part, as follows:

It shall be unlawful for a franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to transfer, sale . . . with respect to its franchise or dealership.

171.   Defendant's wrongful acts and bad faith conduct as set forth above violate Section 466(1) of the New York Act.

172.   As a result of Defendant's violation of Section 463(2)(k) of the New York Act, Major Kia of Long Island City has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

### FIFTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE FEDERAL AUTOMOBILE
### DEALER'S DAY IN COURT ACT—15 U.S.C.A. 1221)

173.   Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "172" as if each were more fully set forth at length herein.

174.   The ADDCA (15 U.S.C.A. 1221, *et seq.*) provides a dealer with a federal cause of action against an automobile manufacturer who has failed to act in good faith regarding a franchise.

175.   Major Kia of Long Island City is an "automobile dealer" within the meaning of Section 1221(c) of the ADDCA.

176.   Defendant is a "automobile manufacturer" within the meaning of Section 1221(a) of the ADDCA.

177.   The Dealer Agreement between Defendant and Major Kia of Long Island City is a "franchise" within the meaning of Section 1221(b) of the ADDCA.

178.   Defendant's bad faith conduct and wrongful acts, as set forth above, violate 15 U.S.C.A. 1221, et seq.

179.   As a result of Defendant's violation of 15 U.S.C.A. 1221, et seq., Plaintiff has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

## SIXTEENTH CLAIM FOR RELIEF
### (BREACH OF GOOD FAITH AND FAIR DEALING)

180.   Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "179" as if each were more fully set forth at length herein.

181.   As a result of Defendant's wrongful acts and bad faith conduct as set forth above, Defendant breached the common law duties of good faith and fair dealing implied covenants contained in the parties' Dealer Agreement and the Master Settlement Agreement.

182.   As a result of Defendant's breach of the implied covenants of good faith and fair dealing contained in the Dealer Agreement and the Master Settlement Agreement, Major Kia of Long Island City has sustained substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

## SEVENTEENTH CLAIM FOR RELIEF
### (BREACH OF FIDUCIARY DUTY)

183.   Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "182" as if each were more fully set forth at length herein.

184.   The Dealer Agreement and the resulting franchise relationship between the parties (a) place Defendant in a position of disproportionate control, power, superiority, influence, and dominance over Major Kia of Long Island City and Kia of the Bronx; (b) require Major Kia of Long Island City and Kia of the Bronx to provide confidential and proprietary information to Defendant, creating a confidential relationship; and (c) make Major Kia of Long Island City and Kia of the Bronx dependent upon Defendant for economic survival, forcing Major Kia of Long Island City and Kia of the Bronx to repose special trust and confidence in Defendant.

185.   Pursuant to the parties' Dealer Agreements and the resulting franchise relationship between the parties, Defendant controls most aspects of Major Kia of Long Island

City's and Kia of the Bronx business and Defendant is permitted to terminate the parties Dealer Agreements for material breaches of most of the obligations imposed on Major Kia of Long Island City and Kia of the Bronx therein.

186.    The aforementioned effects of the Dealer Agreements upon the relationship between the parties, and the obligations Defendant owes Major Kia of Long Island City and Kia of the Bronx as a result of the New York Act and the ADDCA, establish a fiduciary relationship between Defendant and each of Major Kia of Long Island City and Kia of the Bronx.

187.    As a fiduciary, Defendant owes Plaintiff the highest degree of loyalty and good faith.

188.    The wrongful acts of Defendant, to the detriment of Plaintiffs, as more fully described herein, including, constitute a breach of the fiduciary duties Defendant owes each of Major Kia of Long Island City and Kia of the Bronx.

189.    As a result of Defendant's conduct, Plaintiffs have sustained damages in an amount to be determined at trial but in no event less than $6,200,000.

### EIGHTEENTH CLAIM FOR RELIEF
### (VIOLATION OF § 463(2)(d)(1) OF THE NEW YORK STATE FRANCHISED MOTOR VEHICLE DEALER ACT)

190.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "189" as if each were more fully set forth at length herein.

191.    Section 463(2)(d)(1) of the New York Act provides, in pertinent part, as follows:

It shall be unlawful for any franchisor to terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise.

192.    The actions of KMA have and will result in significant and substantial damages to be sustained by Major Kia of Long Island City, including the destruction of Major Kia of Long Island City's business.

193.    The above-actions by KMA are restrictions upon Major Kia of Long Island City's right to own and operate a KMA franchised dealership and will devastate Major Kia of Long Island City's parts, service and sales business.

194.    The above actions on the part of KMA toward Major Kia of Long Island City are tantamount to a constructive termination of the Dealer Agreement without due cause.

195.    KMA'S wrongful acts and bad faith conduct as set forth above violate Section 463(2)(d)(1) of the New York Act.

196.    As a result of KMA'S violation of Section 463(2)(d)(1) of the New York Act, Major Kia of Long Island City has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

**NINETEENTH CLAIM FOR RELIEF**
**(VIOLATION OF § 463(2)(d)(1) OF THE NEW YORK STATE**
**FRANCHISED MOTOR VEHICLE DEALER ACT)**

197.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "196" as if each were more fully set forth at length herein.

198.    Section 463(2)(d)(1) of the New York Act provides, in pertinent part, as follows:

It shall be unlawful for any franchisor to terminate, cancel or refuse to renew the franchise of any franchised motor vehicle dealer except for due cause, regardless of the terms of the franchise.

199.    The basis relied upon by Defendant in its November 5, 2013 illegal termination letter for seeking to terminate Major Kia of Long Island City as a Kia franchisee are a pretext for

Kia's real reasons for seeking to terminate the Dealer Agreement and Major Kia of Long Island City.

200.    Defendant cannot terminate Major Kia of Long Island City for due cause or in good faith.

201.    Defendant's bad faith conduct and wrongful acts as set forth above, including, but not limited to, its actions in seeking to terminate the Dealer Agreement violate Section 463(2)(d)(1) of the New York Act.

202.    As a result of Defendant's violation of Section 463(2)(d)(1) of the New York Act, Major Kia of Long Island City has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $5,000,000.

## TWENTIETH CLAIM FOR RELIEF
## (INJUNCTION PURSUANT TO § 463(E)(1) AND 469 OF THE  NEW YORK  ACT)

203.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "202" as if each were more fully set forth at length herein.

204.    Defendant's course of conduct, as set forth above, is, among other things, (a) violative of the New York Act, (b) violative of the ADDCA, and (c) in breach of the good faith and fair dealing implied in every contract.

205.     In the event that Defendant is permitted to terminate the Dealer Agreement, Major Kia of Long Island City will suffer the loss of its entire business.

206.     In the event that Defendant is permitted to terminate the Dealer Agreement, Major Kia of Long Island City.

207.    Plaintiff has no adequate remedy at law.

208.    Section 463(e)(1) of the New York Act provides:

Any franchise motor vehicle dealer who receives a written notice of termination .

. . may, have a review of the . . . the threatened termination by instituting an action, as provided in section four hundred sixty-nine of   this article. If such action is commenced within four months of receipt of notice, such action shall serve to stay, without bond, the proposed termination . . . until the final judgment has been rendered in an adjudicatory proceeding or action as provided in section four hundred sixty-nine of this article.

209.    The New York Act § 469(1) provides as follows:

A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

210.    Pursuant to the New York Act § 463(e)(1) and § 469, Major Kia of Long Island City is entitled to a permanent injunction enjoining Defendant from terminating, suspending, canceling, limiting or otherwise restricting: (a) Major Kia of Long Island City rights under the Dealer Agreement; and (b) Major Kia of Long Island City right to own and operate a Defendant franchised motor vehicle dealership.

211.    Therefore, pursuant to the New York Act §§ 463(e)(1) and 469(1), Major Kia of Long Island City is entitled to a permanent injunction enjoining Defendant from terminating, suspending, canceling, limiting or otherwise restricting the Dealer Agreement and Major Kia of Long Island City right to own and operate a Defendant dealership.

## TWENTY-FIRST CLAIM FOR RELIEF
### (AWARD OF ATTORNEY'S FEES, COSTS AND DISBURSEMENTS AGAINST DEFENDANT)

212.    Plaintiffs repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "211" as if each were more fully set forth at length herein.

213.    The New York Act § 469 provides as follows:

A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or

proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

214.   Major Kia of Long Island City has been aggrieved by Defendant's violations of the New York Act and the ADCCA, and Defendant's breach of the common law duties of good faith and fair dealing implied covenants contained in the Dealer Agreement and Defendant's breach of fiduciary duties owed to Plaintiff.

215.   Major Kia of Long Island City, pursuant to § 469 of the New York Act, is entitled to an award, as against Defendant, of necessary costs and disbursements plus a reasonable attorney's fee.

216.   Major Kia of Long Island City has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the New York Act and the Dealer Agreement, for all of which sums, as determined and allowed by the Court, Major Kia of Long Island City is entitled to judgment as against Defendant.

**TWENTY-SECOND CLAIM FOR RELIEF**
**(PUNITIVE DAMAGES)**

217.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "216" above, as if set forth fully at length herein.

218.    KMA's actions as described above were and are knowing, intentional, willful, malicious, and in reckless disregard of the contractual, statutory and common law rights of Major Kia of Long Island City.

219.    As a result of KMA's actions, Major Kia of Long Island City is entitled to punitive damages in an amount to be determined at the time of trial but in no event less than $10,000,000.

## IV.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues triable by a jury under the Seventh Amendment to the United States Constitution.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

(a)    as to the first claim, for damages in the amount of $1,200,000;

(b)    as to the second claim, for damages in the amount of $1,200,000;

(c)    as to the third claim, for damages in the amount of $1,200,000;

(d)    as to the fourth claim, for damages in the amount of $1,200,000;

(e)    as to the fifth claim, for damages in the amount of $1,200,000;

(f)    as to the sixth claim, for damages in the amount of $1,200,000;

(g)    as to the seventh claim, for damages in the amount of $1,200,000;

(h)    as to the eighth claim, for damages in the amount of $1,200,000;

(i)    as to the ninth claim, for injunctive relief against the termination of the dealership of Kia of the Bronx;

(j)      as to the tenth claim, for damages in the amount of $1,200,000, and for injunctive relief against the termination of Kia of the Bronx.

(k)      as to the eleventh claim, for reasonable attorney's fees and the costs and expenses of this action;

(l)      as to the twelfth claim, for punitive damages in the amount of $10,000,000; and that Plaintiffs have such other and further relief as the Court deems just and proper;

(m)      as to the thirteenth claim, for damages in the amount of $5,000,000;

(n)      as to the fourteenth claim, for damages in the amount of $5,000,000;

(o)      as to the fifteenth claim, for damages in the amount of $5,000,000;

(p)      as to the sixteenth claim for damages in the amount of $5,000,000;

(q)      as to the seventeenth claim, for damages in the amount of $6,200,000;

(r)      as to the eighteenth claim, for damages in the amount of $5,000,000;

(s)      as to the nineteenth claim, for damages in the amount of $5,000,000;

(t)      as to the twentieth claim, for injunctive relief against the termination of the dealership of Major Kia of Long Island City ;

(t)      as to the twenty first claim, for reasonable attorney's fees and the costs and expenses of this action;

(u)      as to the twenty second claim, for punitive damages in the amount of $10,000,000.

38

Dated: Mineola, New York
November 12, 2013

Steven Blatt (SHB-6792 )
Bellavia Blatt Andron & Crossett, PC
200 Old Country Road—Suite 400
Mineola, NY 11501
Tel.  (516) 873-3000
Fax  (516) 873-9032

*Attorneys for Plaintiffs*