UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
                                               :                        8/22/16
                                               :
H.B. AUTOMOTIVE GROUP, INC, d/b/a KIA          :
OF THE BRONX, and MAJOR MOTORS OF              :
LONG ISLAND CITY, INC., d/b/a MAJOR KIA        :      13-CV-4441 (VEC)
OF LONG ISLAND CITY,                           :
                               Plaintiffs,     :      MEMORANDUM
                                               :      OPINION & ORDER
               -against-                       :
                                               :
KIA MOTORS AMERICA,                            :
                               Defendant.      :
                                               :
-----------------------------------------------------------X
```

VALERIE CAPRONI, District Judge:

Plaintiffs H.B. Automotive Group, Inc., d/b/a Kia of the Bronx ("Bronx Kia") and Major

Motors of Long Island City, Inc. d/b/a Kia of Long Island City ("Major LIC") brought suit

against Defendant Kia Motors America ("KMA") alleging multiple violations of federal and

state law arising out of their relationship as franchisees and franchisor.  Now pending before the

Court is Defendant's motion for summary judgment on Plaintiffs' remaining claims under the

New York Franchised Motor Vehicle Dealer Act ("Dealer Act"), N.Y. Veh. & Traf. §§ 460, *et

seq.*, and under state common law (the "Motion").  For the reasons stated below, Defendant's

Motion is GRANTED.

## BACKGROUND

### I.    The Parties

Defendant KMA is the exclusive distributor of Kia-brand motor vehicles, parts, and

accessories in the United States.  Def. Mem. at 2 (Dkt. 98).  Bronx Kia and Major LIC were local

dealerships affiliated with the Major Auto Group, a group of dealerships owned and managed by

brothers Bruce and Harold Bendell.  Third Am. Compl. ¶ 5 ("TAC") (Dkt. 60); Sullivan Aff. Ex.

A-B ("Bendell Dep."), at 16:6-25 (Dkt. 99-2).  Under separate Dealer Agreements with KMA, Bronx Kia and Major LIC became authorized Kia dealers in 2001 and 1999, respectively.[1]

## II.      The March 2012 "Master Settlement Agreement"

In 2012, KMA and Major Auto Group became embroiled in a number of disputes, which they resolved in a Master Settlement Agreement (the "MSA"), signed in March 2012, and to which Bronx Kia, Major LIC, and KMA are parties.  Sullivan Aff. Ex. B-1 (Dkt. 99-8); Bendell Dep. at 43:9-44:9.  The MSA provided that time was of the essence and that Bronx Kia would voluntarily terminate its dealership on September 30, 2013, unless KMA consented to a transfer of the franchise before that date.  If Bronx Kia wanted to transfer the franchise, the parties agreed that September 1, 2013, was the deadline for Bronx Kia to submit a fully executed asset purchase agreement ("APA") to KMA and for any prospective buyer to submit a franchise application package to KMA.  Sullivan Aff. Ex. B-1 at 5.  KMA agreed to pay Bronx Kia $50,000 if the voluntary termination took effect without an approved transfer.  *Id* at 6.

In a separate MSA provision, Major LIC agreed to renovate its Kia facility to satisfy KMA's Facility, Image and Dealer Identification Standards.  *Id* at 3-4.  An Amendment and Addendum to its Dealer Agreement set forth a schedule for completing the renovations by June 2013.  Sullivan Aff. Ex. B-3 (Dkt. 99-9); Bendell Dep. at 61:14-62:13, 65:8-14.

## III.     Bronx Kia's Attempts to Transfer Its Dealership

One month after entering into the MSA, Bronx Kia submitted materials to KMA necessary to obtain its consent to transfer the franchise to Jason Argyropoulos.  Sullivan Aff. Ex. B-33 ¶ 2 (Dkt. 99-16); Sullivan Aff. Ex. A-A ("Arygyropoulos Dep."), at 74:15-75:7 (Dkt. 99-1).

---

[1]      Prior to October 26, 2013, Bronx Kia was an authorized Kia dealer pursuant to a Dealer Agreement dated February 26, 2001.  Dougherty Decl. ¶¶ 3, 6 (Dkt. 100); Dougherty Decl. Ex. A (Dkt. 100-1).  Prior to March 18, 2015, Major LIC was an authorized Kia dealer pursuant to a Dealer Agreement dated April 28, 1999.  Dougherty Decl. ¶¶ 4, 7; Dougherty Decl. Ex. B (Dkt. 100-2).

KMA rejected that application, citing poor customer satisfaction records, inadequate facilities proposals, and Argyropoulos' lack of successful dealership experience.  Sullivan Aff. Ex. B-55 (Dkt. 99-25); Arygyropoulos Dep. at 166:25-167:6.  Bronx Kia submitted a second application seeking consent to transfer the franchise to a business substantially owned by Arygyropoulos, which KMA also denied, for essentially the same reasons.  Sullivan Aff. Ex. B-64 (Dkt. 99-29).  Subsequently, Bronx Kia filed suit in New York State court seeking damages for KMA's refusal to consent to either of those proposed transfers.  *See* Dkts. 1-2.  That lawsuit was removed to federal court.  Dkt. 1.

On August 27, 2013, four days before the purchase proposal deadline in the MSA, Bronx Kia requested a forty-five day extension in anticipation of a third transfer proposal, this time from Milea Auto Group ("Milea").  Sullivan Aff. ¶¶ 7-8 (Dkt. 99).  KMA denied the request for an extension.  *Id.*  The next day, Bronx Kia filed motions for a temporary restraining order and a preliminary injunction and submitted a proposed APA for Milea to KMA.  Sullivan Aff. Ex. B-69 (Dkt. 99-32); Sullivan Aff. Exs. A-D ("Dougherty Dep.") at 108:19-23 (Dkt. 99-4); Dkt. 7.  Judge Furman denied the motions for a temporary restraining order and a preliminary injunction.  Dkts. 13, 25; Sullivan Aff. Exs. C, D (Dkts. 99-41, 99-42).  Milea submitted an incomplete application package to KMA on September 11, 2013.  Sullivan Aff. Ex. B-71; Dougherty Dep. at 116:22-117:11.  On September 16, 2013, KMA requested the missing information from Milea and notified it that "any review" of its proposal was "solely for the purposes of determining whether [the Proposal] could form part of an acceptable settlement."  Sullivan Aff. Exs. B-72, B-74 (Dkts. 34, 35); Sullivan Aff. Ex. E (Dkt. 99-43).  The following week, KMA rejected Milea's application, citing missing and below-average customer satisfaction scores from Milea's other dealerships and an unacceptable facility proposal.  Sullivan Aff. Ex. B-76 (Dkt. 99-36).  With its notice of rejection, KMA reiterated that it believed it had no obligation to review or respond to

3

the APA or Milea's application because the application was received after the September 1

deadline contained in the MSA.  *Id*.  As per the terms of the MSA, Bronx Kia's Dealer

Agreement terminated on October 26, 2013, and KMA paid Bronx Kia $50,000.[2]  Dougherty

Decl. ¶ 6; Dougherty Decl. Ex. D (Dkt. 100-4).

### IV.   Major LIC's Attempts to Transfer Its Dealership

Major LIC informed KMA in April 2013 that it would not renovate its dealership facility

despite its prior agreement to do so.  Bendell Dep. at 134:23-135:7.  In response, KMA declared

a breach but gave Major LIC until October 31, 2013, to cure the breach.  Sullivan Aff. Ex. B-16

at 3; Bendell Dep. at 147:17-22.  Major LIC took no action, and on November 5, 2013, KMA

issued a Notice of Termination ("NOT"), citing, *inter alia*, Major LIC's failure to renovate its

facility.  Sullivan Aff. Ex. B-19 (Dkt. 99-11); Bendell Dep. at 170:4-10.  By this point, Major

LIC, claiming KMA had breached the MSA in various ways, had already joined Bronx Kia's

lawsuit against KMA.  *See* Dkt. 14.

Shortly thereafter, following mediation, KMA and Major LIC entered into an Interim

Settlement Agreement ("ISA") on May 20, 2014.  Sullivan Aff. Ex. B-21 (Dkt. 99-12); Bendell

Dep. at 173:11-23.  The ISA provided that KMA would evaluate information submitted by

Nikolaos Letsios, a potential purchaser, subject to prescribed terms and conditions.  *Id*.  Those

terms and conditions included that Major LIC would "cause Letsios to submit, by no later than

21 days from the date [of the ISA]" a set of documents and information defined as the "Letsios

Information."  *Id.* at ¶ 4.  The ISA specifically provided that KMA would not undertake review

of the Letsios Information unless "all of the information  . . . [was] provided to KMA on a timely

---

[2]       The Bronx Kia franchise was terminated on October 26, 2013, rather than September 30, 2013, because
KMA agreed to postpone the voluntary termination until Judge Furman decided the Plaintiff's August 29th motion
for preliminary injunction.

basis." *Id.* at ¶ 5.  Further, the ISA provided, "Major LIC [would] not submit to KMA, or request KMA's consent to, any agreement between Major LIC and Letsios unless and until KMA first agree[d] in writing to the submission of such an agreement." *Id.*  The ISA also expressly provided that the "[ISA] is without prejudice to . . . KMA's position that it has no obligation to review the Letsios Information and that Major LIC has no right to transfer its Kia assets free and clear of the notice of termination served by KMA on Major LIC."  Sullivan Aff. Ex. B-21.

Major LIC alleges that KMA violated the ISA by failing to provide Letsios an application form within 48 hours of the ISA's ratification, as required by the ISA.  Harfenist Decl. Ex. 4-20 (Dkt. 105-6); Sullivan Aff. Ex. B-21.  The parties do not dispute that KMA provided Letsios an application form on May 28, 2014, eight days after adopting the ISA, and that KMA established a submission deadline of June 9, 2014, for the Letsios Information.  Harfenist Decl., Ex. 4-20.  KMA also notified Letsios that it had no obligation to review the information he provided, and that any review would be conducted solely as a potential means to settle the lawsuit.  *Id.*  Letsios provided the Letsios Information to KMA on or about June 6, 2014.  Sullivan Aff. Ex. B-97 (Dkts. 99-39, 99-40); Dougherty Dep. at 180:21-182:3, 182:10-13.

KMA raised two problems with the Letsios Information, which provided the basis for withholding consent to transfer Major LIC to Letsios.  First, KMA determined the Letsios Information was incomplete because it did not include December 2013 or February 2014 customer service and sales effectiveness data for Letsios' dealership, City Mitsubishi.  Sullivan Aff. Ex. B-22 (Dkt. 99-13); Sullivan Aff. Ex. 97 (Dkt. 99-40).  Letsios acknowledges that information was not provided but asserts the information was complete for purposes of the ISA because no customer service and sales effectiveness data existed for the months in question. Letsios Dep. at 138:23-154:9.  Second, KMA found that Letsios' proposed site plans did not meet KMA's showroom and facility standards.  Sullivan Aff. Ex. B; Dougherty Dep. at 185:9-

5

21, 191:2-192:7.  Letsios does not dispute the contents of the site plans he provided to KMA but stresses that the designs he submitted were "flexible" in order to make his information more attractive.  Letsios Dep. at 106:12-111:13.  Major LIC did not seek nor did KMA give written consent to an APA between Major LIC and Letsios, and no APA was ever submitted to KMA.  Meyers Decl. ¶ 7 (Dkt. 101).

### V.      Motion for Summary Judgment

In their Opposition to this Motion, Plaintiffs voluntarily withdrew a number of claims.[3] What remains are: (1) KMA's alleged violation of the Dealer Act § 466 for refusing to consent to the proposed sale of Bronx Kia to Milea;[4] (2) KMA's alleged violation of the Dealer Act § 466 for refusing to consent to the proposed sale of Major LIC to Letsios; (3) KMA's alleged violation of the Dealer Act § 463(2)(k) for refusing to consent to the proposed sale of Major LIC to Letsios; and (4) KMA's alleged breach of contract for rejecting the APA between Major LIC and Letsios in violation of the Kia Dealer Sales and Service Agreement.[5]  *See* Pls.' Opp. Mem. at 2-3.  On August 28, 2015, Defendant filed this motion for summary judgment, Dkt. 97, which Plaintiffs oppose, Dkt. 106.

---

[3]      Plaintiffs' Third Amended Complaint ("TAC") raised twenty-five causes of action under the Dealer Act, the Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221, *et seq.* ("ADDCA"), and various common law breach of contract and fair-dealing theories.  TAC at ¶¶ 82-233.

[4]      In its seventh cause of action, Bronx Kia alleges that KMA's course of conduct, including its disapproval of the proposed sale to Argyropoulos, "as well subsequent proposed sales of Kia of the Bronx," unreasonably restricted the ability of Bronx Kia to transfer its assets under the Dealer Act.  TAC ¶ 126.  While KMA's denial of the proposed sale to Milea is not explicitly referenced *anywhere* in the TAC, the Court reads "subsequent proposed sales" to mean Bronx Kia's proposed sale to Milea.

[5]      Major LIC alleges KMA breached its Dealer Agreement by its "disapproval of the Asset Purchase Agreements between Major LIC and the third-party purchasers."  TAC ¶ 235.  It is, however, undisputed that no APA was ever submitted to KMA in connection with the proposal of Major LIC to transfer the dealership to Letsios.  Meyers Decl. ¶ 7 (Dkt. 101).  Plaintiffs explicitly maintain in their Opposition that the breach of contract claim as it relates to the transfer between Major LIC and Letsios remains before the Court, Pl. Opp. at 3, but neither of the parties argues this claim in the briefs.  Because it is undisputed that no APA was ever submitted to KMA for Letsios, the breach of contract claim is properly dismissed on summary judgment.

**DISCUSSION**

I.   **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Courts "'construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009) (alteration omitted)).  The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations and internal quotation marks omitted).  Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  *Sista v. CDC Ixis N. America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (per curiam) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987)).  "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment must be denied.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

II.   **The Dealer Act**

Plaintiffs allege that KMA's refusals to consent to the proposed transfers to Milea and Letsios violate the Dealer Act § 466.  Section 466 of the Dealer Act provides that "[i]t shall be unlawful for any franchisor directly or indirectly to impose unreasonable restriction on the

franchised motor vehicle dealer relative to transfer, sale . . . or termination of a franchise . . . ."

N.Y. Veh. & Traf. § 466(1).  The Act continues that "[i]t shall be deemed an unreasonable

restriction upon the sale or transfer of a dealership for a franchisor . . . directly or indirectly to

prevent or attempt to prevent a franchised motor vehicle dealer from obtaining the fair value of

the franchise . . . ."  *Id.* at § 466(2).  Major LIC claims that by refusing to consent to the Letsios

transfer, KMA also violated section 463(2)(k) of the Dealer Act, which makes it unlawful "for

any franchisor to unreasonably withhold consent to the sale or transfer of an interest . . . to any

other person or party by any franchised motor vehicle dealer . . . ."  *Id.* at § 463(2)(k).

      Dealer franchise rights can be waived in a "valid release or settlement agreement."  *See*

Veh. & Traf. § 463(2)(l); *see also Sportique Motors, Ltd. v. Jaguar Cars, Inc.*, 195 F. Supp. 2d

390, 398 (E.D.N.Y. 2002) (enforcing waiver of dealer's rights), *aff'd*, 55 F. App'x 580 (2d Cir.

2003).  Under the Dealer Act, "it is not unreasonable to refuse a request to sell *after* a franchise

is already subject to termination."  *V.M. Paolozzi Imports, Inc. v. Am. Honda Motor Co.*, No.

7:12-CV-1052 (FJS) (ATB), 2015 WL 7776926, at *9 (N.D.N.Y. Dec. 2, 2015), *appeal

dismissed* (Mar. 30, 2016) (emphasis in original); *see also Ganley v. Mazda Motor of Am., Inc.*,

367 F. App'x 616, 625-26 (6th Cir. 2010) (collecting authorities under various states' franchise

laws for the proposition that refusal to approve a sale after notice of termination is not

unreasonable because "there is little left to sell"); *H-D Michigan, LLC v. Sovie's Cycle Shop,

Inc.*, 626 F. Supp. 2d 274, 279 (N.D.N.Y. 2009) (holding that a dealer has no right to transfer the

franchise "free and clear" of a pending notice of termination).

    **A.  There Is No Genuine Dispute of Material Fact That KMA's Refusal to Consent
        to the Proposed Transfer of Bronx Kia Was Permissible**

      Bronx KIA argues that KMA unreasonably refused to permit the transfer of the franchise

to Milea in violation of the Dealer Act.  Bronx Kia does not dispute, however, that it was

properly subject to termination as of September 1, 2013, by the terms of the MSA.  *See* Pl. Opp.

at 3-5.  There being no genuine dispute as to that fact, as a matter of law KMA's refusal to accept

the Milea transfer was not unreasonable because a dealer properly subject to termination does not

have a free and clear right to transfer.

The parties explicitly agreed that the MSA was a valid settlement agreement for purposes

of Section 463(2)(l) of the Dealer Act.  Sullivan Aff. Ex. B-1.  The parties also agreed that Bronx

Kia would voluntarily terminate its Dealer Agreement, effective September 30, 2013, but that:

> Bronx Kia shall have until September 1, 2013 (the "Submission Deadline") to (i) submit to KMA a fully executed, binding and bona fide written asset purchase agreement (a "Proposal" [or "APA"]) to sell all or substantially all of its Kia-related assets to a third party which is an Unaffiliated Proposed Purchaser (as hereinafter defined), and (ii) cause such Unaffiliated Proposed Purchaser to submit to KMA a complete application package . . . .

*Id.*  In the MSA, KMA agreed to "not unreasonably withhold its consent to a Proposal within the

meaning of Section 463(2)(k)" of the Dealer Act.  *Id.*  Thus, in the MSA, Bronx Kia agreed to

specific deadlines by which it would seek KMA's approval to transfer its franchise, and KMA

agreed to be bound by section 463(2)(k) in making its decision to accept or refuse a transfer as

long as the terms and deadlines were met.

Bronx Kia did not abide by the terms of the MSA in submitting the proposal to transfer

the franchise to Milea.  Plaintiffs do not dispute that, although Bronx Kia submitted an APA for

the proposed Milea transfer to KMA on August 28, 2013, Milea did not submit any of its

application materials until September 11, 2013.  Pl. Opp. at 5.  Thus, the Milea proposal was late

under the terms of the MSA.  KMA nevertheless considered the proposal, although KMA made

clear to Bronx Kia that its review of the Milea proposal was being done in an attempt to settle the

litigation, not because it was required to do so by the MSA.  Sullivan Aff. Ex. B-76; Sullivan

Aff., ¶¶ 8, 9, 11.  Bronx Kia contends that KMA nonetheless "waived its right to object on

timeliness grounds" by reviewing Milea's September 11 application.  Pl. Opp. at 5.  While Plaintiffs dispute the extent to which KMA notified them that the review was optional, it is clear that KMA had no obligation under the terms of the MSA to consider Milea's application to purchase Bronx Kia's dealership.

The September 1, 2013, submission date for Bronx Kia's proposed transfer was part of a valid settlement agreement under the Dealer Act.  Accordingly, as of September 1, 2013, Bronx Kia was properly subject to termination on September 30, 2013, because no prospective buyer had submitted an application for transfer by the deadline.  KMA, therefore, was not "unreasonable" within the meaning of Section 466 when it refused to consent to the Milea transfer because Bronx Kia was already subject to termination.  *See V.M. Paolozzi Imports, Inc.*, 2015 WL 7776926, at *9 ("Defendant could not have been unreasonable in refusing to consider a prospective sale . . . because each of Plaintiff Dealerships' franchises was properly subject to termination . . . ."); *H-D Michigan, LLC*, 626 F. Supp. 2d at 279 ("[i]t was not unreasonable for [the franchisor] to refuse a transfer request where, as here, the . . . request was made *after* the franchise was already the subject of a termination notice.") (emphasis in original).

In any event, KMA relied on reasonable factors in declining to consent to the Milea transfer.  Milea does not dispute that its application was not complete and that its customer satisfaction scores for at least two of its other dealerships were below zone and regional averages.  Sullivan Aff. Ex. B-77 at 1-3 (Dkt. 37).  Customer satisfaction scores are valid grounds on which to refuse a transfer proposal.  *See In re Claremont Acquisition Corp., Inc.*, 186 B.R. 977, 987 (C.D. Cal. 1995), *aff'd*, 113 F.3d 1029 (9th Cir. 1997) (holding, under statute with "unreasonable" refusal to consent language, that below average customer satisfaction scores are reasonable grounds for declining to consent to transfer); *Gray v. Toyota Motor Sales, U.S.A.*, 806 F. Supp. 2d 619, 623-24 (E.D.N.Y. 2011) (granting Rule 12(b)(6) motion to dismiss where

plaintiff alleged franchisor unreasonably withheld consent to transfer based on customer satisfaction scores);; *In re Van Ness Auto Plaza, Inc.*, 120 B.R. 545, 550 (Bankr. N.D. Cal. 1990) ("It is not beyond the realm of reasonable decisions for a manufacturer . . . to refuse to accept a dealer with CSI rankings that are average at best and possibly well-below average.").  As such, even though KMA had no obligation to review the Milea proposal, its refusal to consent to the transfer to Milea was not unreasonable under section 466 of the Dealer Act.  Moreover, Bronx Kia has presented no evidence to create a genuine dispute of material fact that KMA reviewed the Milea proposal in bad faith or that its refusal was unreasonable.[6]  Accordingly, Defendant's motion for summary judgment is granted with respect to Bronx Kia's claim arising from Defendants refusal to consent to the Milea transfer.

>    **B.  There Is No Genuine Dispute of Material Fact That KMA's Refusal to Consent to the Proposed Transfer of Major LIC Was Permissible**

Major LIC argues that KMA unreasonably refused to permit it to transfer its franchise to Letsios, in violation of the Dealer Act.  There is no dispute that Major LIC was properly subject to termination as of November 5, 2013 by the terms of the MSA because, *inter alia*, it had breached its contractual duties to renovate its facility.  Sullivan Aff. Ex. B-19.  There being no genuine dispute as to that fact, as a matter of law KMA's refusal to accept the Major LIC transfer was not unreasonable because, as indicated *supra*, a dealer properly subject to termination does not have a free and clear right to transfer.

---

[6]      Bronx Kia equates a lack of effort on KMA's part to obtain further information from Milea to bad faith. "Milea . . . was not given the 'time of day' by KMA.  This lack of effort was demonstrated by KMA's failure to: 1) make any inquiries concerning his application; 2) reach out to him other than in letters; 3) engage in any dialogue with him; and 4) refuse his several entreaties to meet with him to discuss his vision for the Bronx franchise."  Pls.' Opp. Mem. at 17.  Plaintiffs cite no precedent for the proposition that it is bad faith for a franchisor, which is faced with a proposed franchisee who has a substantial, disqualifying characteristic (to wit, poor consumer satisfaction scores) to refuse to engage with that prospective purchaser.

KMA had no obligation to review the proposed transfer to Letsios under the Dealer Act or by the terms of the ISA.  Under the Dealer Act a refusal to consent to a transfer is not unreasonable when the franchisee is properly subject to termination.  *See H-D Michigan, LLC*, 626 F. Supp. 2d at 279.

Nor did the ISA impose a duty on KMA to review the Letsios transfer.  It is undisputed that the first paragraph of the ISA states, "[t]he Mediator has proposed that a settlement of this matter include a sale of Major LIC's Kia assets to Nick Letsios[]. The purpose of this Agreement is to establish the terms and conditions pursuant to which KMA will evaluate that settlement proposal by reviewing the information described below."  Sullivan Aff. Ex. B-21.  The ISA also expressly provides that the "[a]greement is without prejudice to . . . KMA's position that it has no obligation to review the Letsios Information and that Major LIC has no right to transfer its Kia assets free and clear of the notice of termination served by KMA on Major LIC."  *Id.*  The ISA, as part of a mediated settlement between KMA and Major LIC, did not obligate KMA to approve a sale to Letsios.  The purpose of the ISA was to establish the terms and conditions by which KMA would evaluate the proposed sale to Letsios.  Nowhere in the ISA did KMA waive its right to refuse to approve a post-termination transfer.

Furthermore, it is undisputed that KMA reviewed the Letsios proposal and found it to be substantively deficient.  Letsios' information was incomplete because it failed to include sales effectiveness data and customer satisfaction reports for two months for Letsios' City Mitsubishi Dealership.[7]  KMA also found its facility proposals did not adequately demonstrate how Kia's

---

[7]     Letsios asserts that to the extent customer satisfaction data was missing from the Letsios Information, it was due to the fact that no customer satisfaction reports were filed during the relevant months (i.e., the reports did not exist), not because he failed to submit the data.  Letsios Dep. at 150:5-19.  Putting aside whether that is an adequate excuse for the missing data, the Letsios Information as submitted provided KMA a basis to refuse to consent to the transfer.

showroom would coexist with Letsios' existing Mitsubishi showroom.  Sullivan Aff. Ex. B-22.

In order to have approved Letsios, KMA needed to review a corresponding APA, which Major

LIC never submitted.  Dougherty Decl. ¶ 17.  These were all reasonable bases to disapprove the

Letsios transfer.  Thus, even if KMA had an obligation to review Letsios' application, it had no

obligation to approve it, and it had several reasonable reasons to reject the transfer.  Major LIC

has presented no evidence to create a genuine dispute of material fact that KMA reviewed the

Letsios proposal in bad faith or that its refusal to consent was unreasonable.[8]  Accordingly,

summary judgment is granted with respect to Major LIC's claims arising from the proposed

transfer from Major LIC to Letsios.

In sum, KMA agreed to review the Milea proposal and Letsios Information only as

potential means of settling this lawsuit. As both Plaintiffs were properly subject to termination at

the time of their proposed transfers, KMA had no obligation under the Dealer Act to consent to

either transfer.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED.  The Clerk of Court is respectfully

requested to close docket number 97 and to terminate the case.

**SO ORDERED.**

**Date:  August 22, 2016**                                **VALERIE CAPRONI**
**New York, NY**                                         **United States District Judge**

---

[8]        KMA does not dispute that it sent the application forms to Letsios six days later than agreed in the ISA,
but that delay does not make KMA's refusal to consent to the transfer unreasonable.  First, Major LIC, as a party to
the ISA, knew exactly what information Letsios needed to submit regardless of when KMA sent Letsios the
application forms.  That being the case, KMA's delay did not seriously prejudice Major LIC and Letsios' ability to
submit a complete proposal.  Second, although Major LIC contends that the delay prevented Letsios from later
clarifying the "misunderstandings" about his application upon which KMA, in part, based its refusal to consent to
transfer, KMA objected to the Letsios Information on substantive grounds and was under no obligation to request
clarifying information from Letsios.  In all events, the dispute is not material because KMA had no obligation to
consider the Letsios information in the first instance.